UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **RANDY G O'NEAL** | **CASE NO. 19-cv-1472** |
| -vs- | **JUDGE DRELL** |
| **USA** | **MAGISTRATE JUDGE PEREZ-MONTES** |

### RULING

Before the Court is a motion for reconsideration (Doc. 54) of this Court's memorandum ruling and judgment, (Docs. 52, 53), filed by defendant United States of America ("government"). The motion has been fully briefed. For the reasons discussed below, the motion is **GRANTED in part** and **DENIED in part**.

**I.    Background**

On December 20, 2021, this matter was tried on the merits before the undersigned. The case is a Federal Tort Claims Act ("FTCA") claim filed by plaintiff Randy O'Neal ("O'Neal") against the government for damages sustained in a September 25, 2017, motor vehicle accident. The Court entered judgment in favor of O'Neal against the government as follows:

| | |
|---|---|
| Special Damages | |
|    Past Medical Expenses | $35, 109.94 |
|    Future Medical Expenses | $206,764.07 |
|    Vehicle Property Damages | $4,611.59 |
| General Damages inclusive of past and future pain, suffering, anguish, and diminished quality of life | $260,000.00 |

(Doc. 52). The Court also found O'Neal 50% at fault in causing the subject accident and reduced O'Neal's award accordingly. (Id.). In addition, the judgment awarded interest from the

1

date of judgment until paid and one half of the costs of these proceedings. The government now moves for reconsideration of those awards.

**II. Law**

"In FTCA suits, state substantive law applies; however, the Federal Rules of Civil Procedure govern the manner and time in which defenses are raised and when waiver occurs." Lee v. United States, 765 F.3d 521, 523 (5th Cir. 2014) (citation and internal quotation marks omitted). The parties agree that the instant motion is controlled by Federal Rule of Civil Procedure Rule 59(e), and to prevail the movant must show either: (1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error or prevent manifest injustice. In re Benjamin Moore & Co., 318 F.3d 626, 629 (5th Cir. 2002). A Rule 59(e) motion "calls into question the correctness of a judgment." In re Transtexas Gas Corp., 303 F.3d 571, 581 (5th Cir.2002). Fifth Circuit precedent holds that Rule 59(e) "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." Templet v. HydroChem Inc., 367 F.3d 473, 479 (5th Cir. 2004) (citing Simon v. United States, 891 F.2d 1154, 1159 (5th Cir.1990)).

**III. Analysis**

The government moves for reconsideration of the award for future medical expenses, property damage, interest, and costs. At the onset, we requested pretrial memoranda. The government's memorandum, (Docs. 46, 47), was limited entirely to the comparative fault analysis and failed to provide any analysis of damages, or more specifically the future medical expenses and property damages it now prays we reconsider. After O'Neal filed his memorandum, which included an analysis of future medical expenses and property damage, the government failed to further address those issues. Additionally, the government's opening and closing arguments

during the bench trial also failed to address many of the points it now raises. In fact, it appears from the government's motion that many of the facts and arguments it now raises were taken from this Court's ruling, which facts are in the record and were within the government's knowledge prior to filing its pretrial memorandum and certainly prior to trial. For these reasons alone the Court may, and likely should, decline to address much of the motion to reconsider as it pertains to future medical expenses and property damage. In a similar vein, see, *e.g.*, Templet v. HydroChem Inc., 367 F.3d 473, 479 (5th Cir. 2004) (citing Russ v. Int'l Paper Co., 943 F.2d 589, 593 (5th Cir.1991)) ("[A]n unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration."). Nonetheless, we consider the present arguments for clear error and any manifest injustice that may flow therefrom.

### A. Future Medical Expenses

The Court's award of future medical expenses includes costs for additional ablation therapy and cervical fusion. The government argues that the award was entered erroneously and is manifestly unjust because: (i) O'Neal indicated a desire to not undergo surgery; (ii) a significant temporal gap existed without a compelling explanation between O'Neal's first right side ablation, and his first left side ablation, arguably diminishing O'Neal's need for future ablation therapy and cervical fusion; (iii) expert witness for the government Dr. Harold Granger and O'Neal's pain management physician Dr. Sean Stehr each testified by deposition that O'Neal's injury does not necessitate surgery; (iv) the base cost of ablation therapy was incorrectly determined; and (v) a bald assertion that the award of future medical expenses was based upon past medical expenses.

i. **O'Neal's desire to not undergo surgery**

The government's claim that O'Neal simply desires not to undergo future surgery is not supported by trial testimony. O'Neal has long been active singing in a local band and providing announcing services for community events and sporting events at a local high school and college. Accordingly, he deemed the preservation of his voice justification for his reluctance to consider surgery. O'Neal explained his reluctance to consider surgery was because a cervical fusion, unlike ablation therapy, would, at best be temporary, and at worst permanently affect his voice; whereas the ablations provided temporary relief for 12 to 18 months and could be repeated.

O'Neal's treating neurosurgeon, Dr. Erich Wolf II, confirmed in his deposition testimony that he recommended O'Neal see Dr. Stehr, a pain management specialist, for injections in hopes of avoiding surgery. This was suggested because O'Neal expressed concerns about losing his voice. Dr. Wolf also stated that relief from the ablation therapy could last 12 to 18 months, depending upon the patient, but that over time, the efficacy of repeated ablations declined. He believed it was more likely than not that O'Neal would eventually require surgery within the next ten years.

Upon review we do not deem it clearly erroneous for us to have awarded O'Neal future medical costs to cover ten years of ablation therapy and cervical fusion surgery. In this award, the court did not add in an inflation factor which, in itself, would likely have increased the award.

ii. **Temporal Gap**

O'Neal explained he had been unable to schedule a first left side ablation until three years after a first right side ablation because of financial issues and hospital shutdowns from hurricanes and the COVID pandemic. We noted that O'Neal had the financial means to undergo a first left side ablation shortly after the first right side ablation but that the surgery was halted on account of

4

problems he had under anesthesia. On affordability issues, O'Neal's counsel covered medical expenses as part of his representation, and ample time existed between hospital shutdowns from hurricanes and the COVID pandemic to schedule another ablation. (Doc. 52 pp 11-12).

Nevertheless, the fact that O'Neal's first attempt to undergo the first left side ablation was halted on account of difficulties under anesthesia did not preclude a finding that future financial issues could well have prevented rescheduling. Beyond hospital shutdowns, the COVID pandemic put several temporary halts on elective surgeries. Under the unique circumstances presented by the COVID pandemic, hurricanes, and the government's failure to argue these facts before or at trial, we do not deem it clearly erroneous to award O'Neal future medical cost to cover yearly ablations.

### iii. Testimony of Dr. Granger and Dr. Stehr

Dr. Harold Granger, a board-certified orthopedic surgeon who specializes in the treatment of adult and pediatric bone and joint disorders, performed an independent medical examination of O'Neal on behalf of the government. The Government makes the point that Dr. Granger opined O'Neal did not require surgery. Instead, he recommended physical therapy and chiropractic manipulation. As discussed above, this Court's memorandum ruling did not mention Dr. Granger's opinion and recommendation in part because the significance of his opinion and recommendation was not argued before us in memorandum or at trial and because of the following.

In revisiting the testimony of Dr. Granger we note several of his salient observations. In his deposition of November 10, 2021, Dr. Granger testified that while he does evaluate patients with neck issues, he has not performed any cervical surgery since his residency. (Ex 3A-7). His biomechanical testimony regarding the supposed minor nature of the plaintiff's accident was objected to (although the objection was not renewed at trial) and appears to us to have been of little

5

value without a foundation for his expertise in making that judgment. On the subject of appropriate treatment for Mr. O'Neal, Dr. Granger acknowledged the therapeutic nature of ablations (Doc 3A-36 and 3B-30) and agreed that they constituted appropriate, conservative treatment and that, ultimately, Mr. O'Neal "would be looking at a multiple level anterior cervical discectomy...." Meanwhile, continuing with periodic ablations was appropriate.

The Government suggests Dr. Granger verified chiropractic to be the treatment of choice but our reading of his testimony is that chiropractic has been a successful treatment choice for the doctor. He, however, made no statement that it was THE treatment of choice for Mr. O'Neal. Dr. Granger also certainly did not rule out or ever look with disdain at the use of a future surgical intervention (see Ex. 3A-61).

Dr. Sean Stehr is a physical medicine and rehabilitation specialist who focuses on and is board certified in pain management. Dr. Stehr performed radiofrequency ablation therapy on O'Neal's right side in 2018 and left side in 2020. The government asserts that like Dr. Granger, Dr. Stehr recommended O'Neal not undergo surgery. While Dr. Stehr did state that he did not think O'Neal needed surgery, it was because he felt O'Neal could undergo ablation therapy once a year, indefinitely. Comparatively, Dr. Wolf believed the efficacy of the ablation therapy would diminish and surgery was inevitable.

After weighing the testimony of Dr. Granger, an orthopedic surgeon who does not operate on necks, beside Dr. Wolf, a neurosurgeon, and Dr. Stehr, a pain management specialist, we determined that greater weight should be placed on Drs. Wolf and Stehr's testimony. Not only were they O'Neal's treating physicians[1] but diagnosis and treatment plans were similar. Although

---

[1] See, e.g., Ponthier v. Vulcan Foundry, Inc., 668 So. 2d 1315, 1317 (La. App. 1 Cir. 1996) ("[T]he general jurisprudential rules are that a treating physician's opinion is given more weight than a non-treating physician, and the testimony of a specialist is entitled to greater weight than a general practitioner.") (citations omitted); Freeland v. Bourgeois, 950 So. 2d 100, 119–20 (La. App. 3 Cir. 1/24/07), writ denied, 954 So. 2d 144 (La. 4/5/07) ("It has long

6

the government argues that Dr. Wolf saw O'Neal only twice, Dr. Granger saw O'Neal only once. Dr. Granger is an orthopedic surgeon who specializes in bone and joint disorders whereas Dr. Wolf specializes in minimally-invasive spine surgery. While we understand that some orthopedic surgeons do conduct spinal surgeries, they do not have the same specialization when it comes to care of the spine and nerves therein. The same is true for pain management specialists. Accordingly, we place greatest weight on the testimony of Dr. Wolf followed by that of Dr. Stehr.

### iv. Cost of ablation therapy

Future medical expenses were based upon the cost of ten bilateral ablations and the cost of surgery. In his trial memorandum, O'Neal provided the cost/value of $7,500 for a single ablation without citation to the record. The government did not rebut this value in its memorandum or at trial. It now points out that record evidence shows the actual cost to be $6,507 each. (Plaintiff's Trial Ex. 4, Doc. 51-10). O'Neal responds that record evidence and trial testimony supports the $7,500 cost but is unable to reference specifics in the record or trial testimony where such support is found. It may be arguable that inflation will affect future costs in excess of that shown in Doc. 51-10 but we cannot speculate about that. Accordingly, we agree with the government that the award should be reduced. If ablation therapy for a single side costs $6,507, and O'Neal requires bilateral ablations over the course of ten years, the award of future medical expenses for ablation therapy should be $130,140. After including the cost of cervical fusion at $56,764.07, O'Neal's future medical expenses are now reduced and calculated to be $186,904.07.

---

been held that, in general, the observations and opinions of the treating physician are to be accorded greater weight than those of a physician who has only seen the party for purposes of rendering an expert opinion concerning the party's condition.").

> v. **Whether that the award of future medical expenses was based upon past medical expense**

The government also claims that this Court based its award of future medical expenses on past medical expenses. The government, despite its argument, admits that "[t]here is a tenuous link, at best, between O'Neal's past medical expenses [comprising doctor's visits, one electromyography test, cervical imaging via x-rays and MRIs, pain medication, and two ablations] to the [sum awarded O'Neal]." The government is correct that there is a tenuous link between the two because the only aspect of O'Neal's past medical expenses that informs the future medical expenses is the cost of ablation therapy. O'Neal sought damages for ablation therapy and cervical surgery. Had he sought future medical expenses for further doctor visits, imaging, or pain medication, his award could possibly have been greater.

The sum awarded to O'Neal for future medical expenses was comprised exclusively of ablation therapy and cervical surgery as other amounts, including issues of inflation/discount, were neither sought nor proven.

Indeed, the government also claims that O'Neal's award is not discounted to present value or upon consideration of O'Neal's life expectancy. We decline to consider these arguments. Although some of the aforementioned arguments may be gleaned from the record, there is no evidence in the record nor arguments presented relating to any proper inflation or discount methodology.

### B. Property Damage

The government claims that O'Neal has received insurance proceeds to compensate for property damage to O'Neal's vehicle and that any additional award for property damage would result in double recovery. While that may be true, Louisiana applies the collateral source rule pursuant to which "a tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be

reduced, because of monies received by the plaintiff from sources independent of the tortfeasor's procuration or contribution." Bozeman v. State, 879 So. 2d 692, 698 (La. 7/2/04) (citing Louisiana Dep't of Transp. & Dev. v. Kansas City S. Ry. Co., 846 So. 2d 734, 739 (La. 5/20/03). The government does not provide any case law to suggest otherwise. Further, while a payment from a third party could have resulted in an intervention for subrogation, O'Neal's auto insurer Go Auto is notably not a party in this suit. See St. Julian v. Wiltz, 21 So. 3d 449, 455 (La. App. 3 Cir. 10/7/09) (citing Great West Cas. Co. v. State ex rel. Dep't of Transp. and Dev., 960 So.2d 973 (La.App. 1 Cir. 3/28/07), writ denied, 963 So.2d 1005 (La.9/14/07) ("[T]he collateral source rule does not apply when the insurance policy which paid part of the debt owed by the tortfeasor includes a subrogation clause."); Ellis v. Brown, 196 So. 3d 665, 669 (La. App. 2 Cir. 5/18/16) (citing Southern Farm Bur. v. Sonnier, 406 So.2d 178 (La.1981); Smith v. English, 586 So.2d 583 (La.App. 2 Cir. 8/21/1991), writ denied, 590 So.2d 80 (1991)) ("[T]he collateral source rule does not apply where the right of subrogation is involved; in such a case, the plaintiff may recover only his remaining interest in the partially subrogated claim."). There is no evidence in this case proving the existence of a subrogation clause in the Go Auto policy, nor do we have evidence of any amount paid in property damage. Accordingly, it is not erroneous for us to award O'Neal the property damage he incurred.

### C. Interest

The parties are now in agreement that interest is due and payable after satisfaction of the conditions of 31 U.S.C §1304(b)(1)(A). We agree. Accordingly, the government's prayer for reconsiderations on the interest award is granted and interest may be awarded pursuant to and in satisfaction of the conditions provided in 31 U.S.C. § 1304(b)(1)(A).

### D. Costs

The government argues that it can only be required to pay court costs after O'Neal files a Bill of Costs with the Court pursuant to 28 U.S.C. § 2412. The position is correct. As O'Neal has done so (see Doc. 56), the government's argument is moot. The government's objection to the Bill of Costs will be resolved in the context of those filings and nothing in awarded costs in the court's order increases awardable costs and nothing in the costs award shall negatively affect the provisions of 28 U.S.C.§2412.

### IV. Conclusion

In light of the foregoing, it is

**ORDERED** that the motion for reconsideration is be **GRANTED in part** and the award for future damages will be adjusted as described herein. All other aspects of the motion for reconsideration are **DENIED in part** for the reasons expressed herein.

The court will issue an amended judgment in conformity with these findings.

**THUS DONE AND SIGNED** in Alexandria, Louisiana this 24th day of June 2022.

DEE D. DRELL, SENIOR JUDGE
UNITED STATES DISTRICT COURT